IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 1:00-cr-455 |
| ERNESTO FRANCISCO COLE, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The United States files this response in opposition to Defendant Ernesto Francisco Cole's

Motion for Compassionate Release ("Motion") under 18 U.S.C. § 3582(c)(1)(A)(i). Defendant is

currently serving two concurrent life sentences at FCI Edgefield for engaging in a continuing

criminal enterprise, in violation of 21 U.S.C. § 848, and murder while engaged in drug trafficking,

in violation of 21 U.S.C. § 848(e)(1)(A). Defendant seeks release from prison, citing medical

conditions, the COVID-19 pandemic, and an assertion that he is "fully rehabilitated." Because

Defendant does not have a medical condition that qualifies as an "extraordinary and compelling"

reason for release, the statutory sentencing factors in 18 U.S.C. § 3553(a) do not support release.

Accordingly, the Court should deny Defendant's motion.

**Background**

**I.      Facts.**

On December 20, 2000, Defendant was indicted in the Eastern District of Virginia for

conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One),

operating a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (Count Two),

and committing murder while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A)

(Count Three). Exhibit 1, Indictment (Dec. 20, 2000); Exhibit 2, PSR ¶ 1.

At trial, the Government established that Defendant organized and led an extensive criminal enterprise for over a decade, from around 1990 to around 2000. PSR ¶¶ 7–29; *United States v. Cole*, 293 F.3d 153, 156–57 (4th Cir. 2002) (summarizing facts). During this period Defendant, through his enterprise, trafficked at least 1,850 kilograms of cocaine. PSR ¶ 29. Defendant imported cocaine from Panama, through the Port of Miami, into the United States. *Id.* ¶¶ 7–22. Defendant then distributed hundreds of kilograms of cocaine in south Florida and transported hundreds more to eastern Virginia, where he distributed the cocaine to others, including some who cooked it into crack cocaine, for distribution in and around Washington, DC. *Id.* In connection with these activities, Defendant murdered numerous people and committed other acts of violence. *Id.* ¶¶ 8–10, 20–23. Defendant also engaged in money laundering, all in furtherance of his drug enterprise. *Id.* ¶¶ 26–28.

On April 17, 2001, the jury found Defendant guilty on all counts. *Id.* ¶ 3. On motion of the Government, the Court vacated the Count One drug conspiracy conviction because it was a lesser-included offense of the Count Two CCE charge. *See United States v. Cole*, 293 F.3d at 156–57. The court sentenced Defendant to concurrent terms of life imprisonment on Counts Two and Three and ordered that they run concurrently with a seventy-eight-month sentence previously imposed in a separate case in the Southern District of Florida. *Id.*; Exhibit 3, Judgment (July 20, 2001). The Court also ordered Defendant to forfeit more than $20 million in cash proceeds, two Miami residences, and two vehicles. Exhibit 4, Order of Forfeiture (July 20, 2001).

Defendant repeatedly challenged his convictions. He first brought a direct appeal to the U.S. Court of Appeals for the Fourth Circuit, which found his arguments meritless and affirmed the convictions. *United States v. Cole*, 293 F.3d 153, 156 (4th Cir. 2002). The Supreme Court denied *certiorari*. *Cole v. United States*, 537 U.S. 950 (2002). Defendant then filed a motion in

this Court seeking to reverse his convictions pursuant to 28 U.S.C. § 2255, and this Court denied relief. Exhibit 5, Memorandum Order, ECF No. 1:03-cv-1317 (E.D. Va. 2004). Defendant then appealed this Court's denial of his § 2255 motion. The Fourth Circuit denied a certificate of appealability and dismissed the appeal. *United States v. Cole*, 202 F. App'x 608 (4th Cir. 2006). The Supreme Court denied *certiorari*. *Cole v. United States*, 550 U.S. 912 (2007).

## II.    Defendant's Motion for Compassionate Release.

Defendant asserts that he properly exhausted his request for compassionate release by filing a request with BOP prior to filing his motion in 2022. *See* Motion, ECF No. 101 at 2, 4.[1] If released, Defendant says he will move to Panama, *id.* at 9, which is outside the reach and supervision of the U.S. Probation Office. Defendant states that he has experience as a personal trainer and writer and is "confident that [his] financial needs will be fully met" after release. *Id.*

## III.    BOP Efforts to Mitigate the Effects of COVID-19.

The federal Bureau of Prisons ("BOP") has implemented several measures to contain the spread of the COVID-19 virus within prison populations. BOP has made significant progress in distributing and administering vaccines to staff and inmates at its facilities. BOP has also maintained COVID-19 protocols designed to prevent community spread, including limiting access to prisons, restricting prisoner movement within prisons, requiring screening and testing, providing masks and hand cleaners, and separating ill inmates from the rest of the population.

BOP has offered the vaccine to every inmate in BOP-managed institutions, except certain inmates who were recently admitted to facilities after vaccines had been administered. BOP has

---

[1] Although Defendant's Motion refers to multiple exhibits, including a BOP petition and medical records, no such materials are available on the docket. Even assuming the truth of Defendant's assertions about his submission to BOP and his medical history, he has failed to establish an extraordinary and compelling reason for compassionate release.

also offered the vaccine to all staff members. *Oversight of the Federal Bureau of Prisons: Hearing Before the S. Comm. on the Judiciary*, 117th Cong. 5 (2021) (statement of Michael D. Carvajal, Director, BOP). All inmates are also now eligible to receive COVID-19 booster shots. *COVID-19 Vaccine Guidance*, BOP 4 (Oct. 13, 2021), https://www.bop.gov/resources/pdfs/covid_19_ vaccine_guidance_v14_0_2021.pdf. Consistent with guidance issued by the Centers for Disease Control and Prevention ("CDC"), BOP has prioritized offering booster shots to inmates assigned to health service unit jobs; inmates in nursing care centers or other residential health care units; and inmates aged 65 years and older or those of any age with underlying medical conditions. *Id.* At this time, however, any inmate who requests a booster should be able to receive one. As of February 5, 2024, BOP has fully inoculated 81,649 inmates at its facilities. *See Inmate COVID-19 Data*, BOP, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (listing inoculation totals for each individual facility). BOP will continue to offer the vaccine to newly arrived inmates and to inmates who initially declined the vaccine if they change their minds.

## IV.    Conditions at Defendant's Facility.

Defendant is currently serving his life sentences at FCI Edgefield, a medium security facility in Edgefield, South Carolina. BOP Inmate Locator, Register No. 44020-004, https://www.bop.gov/inmateloc/. FCI Edgefield has a total of about 2,000 inmates. *See FCI Edgefield*, BOP, https://www.bop.gov/locations/institutions/edg/ (listing population of 2,072); *Inmate COVID-19 Data*, BOP, https://www.bop.gov/about/statistics/statistics_inmate_ covid19.jsp (listing population of 1,982). As of February 5, 2024, 1081 inmates have been fully inoculated against COVID-19. *Inmate COVID-19 Data*, BOP, https://www.bop.gov/about/ statistics/statistics_inmate_covid19.jsp.

As of February 5, 2024, there is one open case of COVID-19 in the inmate population at FCI Edgefield, and historically the facility has seen 368 total infections among inmates since the

pandemic began. *Id.* Defendant is among those who have contracted COVID-19. Motion, ECF No. 101 at 2.

<u>Argument</u>

I.    **The Court Should Deny Defendant's Motion Because He Has Not Established an Extraordinary and Compelling Reason for Compassionate Release.**

Defendant has not established that this Court should exercise its discretion under § 3582(c)(1)(A)(i) to grant compassionate release, because his medical conditions do not make him particularly susceptible to reinfection with COVID-19.[2]

Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction." Although the statute "does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release," the Sentencing Commission has "addressed the issue in a policy statement." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). According to the policy statement, "extraordinary and compelling reasons" may exist based on the defendant's medical condition, age, family circumstances, or other reasons as determined by BOP. U.S.S.G. § 1B1.13. If a district court finds that extraordinary and compelling reasons exist, the court may not reduce a sentence before "considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." § 3582(c)(1)(A). The defendant bears the burden of proving that he is entitled to relief under § 3582(c)(1)(A). *See, e.g.*, *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021); *see also United States v. Molina*, No. 3:12cr132, 2021 WL 1587904, at *2 (E.D. Va. Apr. 22, 2021); *United States v. Watson*, No. 1:07-cr-396, 2020 WL 7318269, at *1 (E.D. Va. Dec. 11, 2020).

---

[2] Taking the assertions in Defendant's Motion as true, *see supra*, note 1, Defendant properly exhausted his administrative remedies by filing a request for compassionate release with the warden of FCI Edgewood in 2022, and more than 30 days have elapsed without a response.

In *McCoy*, the court held that the policy statement in U.S.S.G. § 1B1.13 is not "applicable" to compassionate release motions brought by defendants under § 3582(c)(1)(A). 981 F.3d at 281–82. Because § 1B1.13 "was adopted before the First Step Act" and specifically mentions only motions brought by BOP, the court reasoned that the policy statement does not apply to motions brought by defendants. *Id.* at 282.

However, § 1B1.13, has recently undergone an amendment. As of November 1, 2023, § 1B1.13 expressly states that courts may grant compassionate release "[u]pon motion of the Director of the [BOP] *or the defendant* pursuant to" Section 3582(c)(1)(A). U.S.S.G. § 1B1.13(a) (emphasis added) (U.S. Sent'g Comm'n 2023) (amended Nov. 1, 2023). Moreover, the text of § 1B1.13 itself now includes discussion regarding "extraordinary and compelling reasons" that merit compassionate release. *Compare* U.S.S.G. § 1B1.13(b) (U.S. Sent'g Comm'n 2023) (amended Nov. 1, 2023), *with* U.S.S.G. § 1B1.13 Application Note 1 (U.S. Sent'g Comm'n 2021) (amended Nov. 1, 2018). Indeed, the permissible reasons previously found in Application Note 1(A), 1(B), and 1(C)—medical circumstances, age, and family circumstances—are now identified as extraordinary and compelling reasons for compassionate release in the text of Policy Statement 1B1.13(b)(1), (b)(2), and (b)(3). And Policy Statement 1B1.13(b)(4) contains a new extraordinary and compelling reason, covering situations where the defendant was a victim of BOP abuse while in custody. Lastly, § 1B1.13(b)(5) contains a new catch-all provision stating that a court may grant compassionate release if the defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." USSG § 1B1.13(b)(5) (U.S. Sent'g Comm'n 2023) (amended Nov. 1, 2023).

Relevant here, a defendant may show an extraordinary and compelling reason for a

sentence reduction based on medical circumstances when he can demonstrate the following:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced
> illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e.,
> a probability of death within a specific time period) is not required. Examples
> include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-
> stage organ disease, and advanced dementia.
>
> (B) The defendant is—
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the
> > aging process, that substantially diminishes the ability of the defendant to
> > provide self-care within the environment of a correctional facility and from
> > which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or
> specialized medical care that is not being provided and without which the defendant
> is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
> > (i) the defendant is housed at a correctional facility affected or at imminent
> > risk of being affected by (I) an ongoing outbreak of infectious disease, or
> > (II) an ongoing public health emergency declared by the appropriate federal,
> > state, or local authority;
> >
> > (ii) due to personal health risk factors and custodial status, the defendant is
> > at increased risk of suffering severe medical complications or death as a
> > result of exposure to the ongoing outbreak of infectious disease or the
> > ongoing public health emergency described in clause (i); and
> >
> > (iii) such risk cannot be adequately mitigated in a timely manner.

USSG § 1B1.13(b)(1).

Courts have held that the COVID-19 pandemic, by itself, is not a sufficient basis for

compassionate release. *See, e.g.*, *United States v. Marcussen*, 15 F.4th 855 (8th Cir. 2021); *United

States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically

entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in

7

society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."). Given the widespread availability of the COVID-19 vaccine at BOP facilities, several courts have concluded that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *see United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.")

At minimum, "a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release." *United States v. Chandler*, No. 3:15mj122 (DJN), 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020). Instead, the Fourth Circuit has cited with approval the requirement that, "[i]n the context of the COVID-19 outbreak," a defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility" to establish an extraordinary and compelling reason for compassionate release. *United States v. Reams*, 847 F. App'x 199, 199 (4th Cir. 2021) (per curiam) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)).

### A.    Defendant has not demonstrated that he faces a particularized susceptibility to COVID-19.

Defendant has not established an extraordinary and compelling reason for compassionate release because he has not shown that he faces a "particularized susceptibility" to COVID-19. *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam). Defendant asserts he was infected with COVID-19 at the time he filed his motion and that he also suffers from scarred

lung tissue, diabetes, hypertension, and sepsis. Motion, ECF No. 101 at 2–3. However, because Defendant has failed to establish that he faces an increased risk of severe illness from COVID-19, he has not established that he is entitled to relief under § 3582(c)(1)(A).

As a threshold matter, "[t]o establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the [CDC] as a COVID-19 risk factor." *Chandler*, 2020 WL 6139945, at *5. Among Defendant's medical conditions, the CDC has identified several—scarred lung tissue, diabetes, and "possibly" hypertension—as COVID-19 risk factors. *See People with Certain Medical Conditions*, CDC (Dec. 6, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Next, a defendant must demonstrate that his condition proves "so severe as to establish his particularized susceptibility to COVID-19." *Chandler*, 2020 WL 6139945, at *5. Conditions that are not serious, including "chronic conditions that can be managed in prison[,] are not a sufficient basis for compassionate release." *United States v. Smith*, No. 3:15-cr-101 (REP), 2021 WL 3641463, at *2 (E.D. Va. Aug. 17, 2021). Here, Defendant's "particularized susceptibility" claim fails because none of his medical conditions is so severe that it cannot be managed in prison. Indeed, Defendant does not suggest that the treatment he is receiving from BOP is inadequate or that he faces risks that BOP cannot adequately mitigate in a timely manner. Therefore, Defendant has not shown a particularized susceptibility, and no extraordinary and compelling reason exists for his compassionate release. *See, e.g.*, *Chandler*, 2020 WL 6139945, at *5; *Smith*, 2021 WL 3641463, at *3.

Similarly, the mere fact that Defendant contracted COVID-19 does not establish "that he suffers a particularized susceptibility to reinfection of the disease or harm therefrom." *United*

*States v. Nabaya*, No. 3:17cr3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021). Given the widespread availability of vaccines at BOP facilities, courts in this district have consistently concluded that defendants who previously contracted and recovered from COVID-19 have not established a particularized susceptibility based on the possibility of reinfection. *See, e.g.*, *United States v. Drayton*, No. 1:09-cr-76-2 (RDA), 2021 WL 4267306, at *8 (E.D. Va. Sept. 20, 2021) (finding that defendant's hypertension and obesity "only suggest[ed] a particularized susceptibility" if his "vaccination and apparent full recovery from COVID-19 are ignored"); *United States v. Aqid*, 555 F. Supp. 3d 279, 282 (E.D. Va. 2021) ("The combined efficacy of the vaccine and the Defendant's previous COVID-19 infection strongly suggests that he has little, if any, risk of contracting or suffering severe illness from COVID-19, even if his facility has another outbreak . . . ."); *see also United States v. Barberi*, No. 2:14-cr-162 (RCY), 2021 WL 44536063, at *4 (E.D. Va. Sept. 29, 2021) (finding that defendant had not established a particularized susceptibility where she had recovered from COVID-19 and received both doses of the vaccine); *United States v. Jones*, No. 3:13-cr-13 (REP), 2021 WL 3082113, at *2 (E.D. Va. July 20, 2021) (finding that "the risk from COVID-19 must be considered slight" where the defendant had "contracted COVID-19, recovered from it, and . . . been fully vaccinated").

### B.    Defendant has not demonstrated that he faces a particularized risk of contracting COVID-19 at FCI Edgefield.

Even if the Court were to determine that Defendant suffers from a medical condition that makes him particularly susceptible to COVID-19, he still has not established an "extraordinary and compelling" reason for compassionate release because he has not shown a "particularized risk of contracting the disease at his prison facility." *Adamson*, 831 F. App'x at 83; *see, e.g.*, *United States v. Evans*, No. 3:00cr63, 2020 WL 5121331, at *4-*5 (E.D. Va. Aug. 31, 2020) (finding that

10

the defendant's underlying medical conditions were "extraordinary and compelling" but that she did not face a particularized risk of contracting COVID-19 at her facility).

Courts have required that a defendant's particularized risk "be supported by evidence of an actual outbreak in his facility, not simply the mere possibility of COVID-19 spreading to his camp." *United States v. Little*, No. 1:10-cr-135, 2020 WL 3442173, at *2 (E.D. Va. June 23, 2020); *see also, e.g.*, *Beahm*, 2020 WL 4514590, at *2. Defendant asserts that as of May 2022, there were 37 staff members and 272 inmates who had contracted COVID-19 since the start of the pandemic. Motion, ECF No. 101 at 1. Defendant also asserts that at one point, there was an outbreak of COVID-19 among 60 inmate food service workers at his facility. *Id* at 3.

As of February 5, 2024, the total number of inmates at FCI Edgefield who have previously contracted COVID-19 has risen to only 368, meaning that fewer than 100 inmates have contracted COVID-19 since Defendant filed his motion in May 2022. *Compare COVID-19 Cases*, BOP *with* Motion, ECF No. 101 at 2. The number of active COVID-19 cases at the facility has been declining such that the situation at FCI Edgefield "is improving, not deteriorating." *United States v. Day*, 474 F. Supp. 3d 790, 806 (E.D. Va. 2020) (finding no particularized risk where the number of positive cases had "steadily declined since Defendant filed his motion"). Indeed, there is currently only 1 active case of COVID-19 among the roughly 2,000 inmates at FCI Edgefield. *Inmate COVID-19 Data*, BOP, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Feb. 5, 2022). In these circumstances, Defendant is not at a heightened risk of reinfection with COVID-19 at his facility. *See, e.g.*, *United States v. Jennings*, No. 3:18-cr-34 (REP), 2021 WL 2815013, at *2 (E.D. Va. July 6, 2021) (finding no particularized risk where the defendant's facility had only 3 positive tests among inmates and 3 positive tests among staff members); *United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding

no particularized risk where there were only 8 active cases of COVID-19 among an inmate population of 1,404).

Moreover, as of February 5, 2024, 1,081 of the inmates at Defendant's facility have been fully inoculated against COVID-19. *Inmate COVID-19 Data*, BOP. Distribution of the vaccine at Defendant's facility further reduces Defendant's risk of reinfection with COVID-19. *See, e.g.*, *Mosley v. United States*, No. 2:11-cr-58-3, 2021 WL 2386120, at *4 (E.D. Va. June 10, 2021) (concluding, based on "information from the CDC" about resuming normal activities after vaccination and evidence that "many of the inmates within [the defendant's] facility [were] vaccinated (and continue to be vaccinated," that the defendant's circumstances were not "so extraordinary as to warrant release from incarceration"). Given the low infection rate and the high vaccination rate at Defendant's facility, he has not established a particularized risk of reinfection with COVID-19. *See, e.g.*, *United States v. Norman*, No. 4:11-cr-101 (RCY), 2021 WL 5003243, at *5 (E.D. Va. Oct. 28, 2021) (finding, based on "the availability of vaccines and the low number of positive cases there currently," that the defendant could not "establish a particularized risk of contracting COVID-19" at his facility); *Smith*, 2021 WL 3641463, at *3 (finding no particularized risk where there were no actives cases of COVID-19 among inmates or staff at the defendant's facility, and the facility had reached "a very high level of vaccinations" among inmates and staff).

Further, Defendant's current incarceration does not present a particularized risk of contracting COVID-19 because his release plan does not show that he is less likely to contract COVID-19 outside of FCI Edgefield. *See, e.g.*, *United States v. Drayton*, No. 1:09-cr-76-2 (RDA), 2021 WL 4267306, at *8 (E.D. Va. Sept. 20, 2021). Defendant states that he plans to move to Panama if released, but this release plan "would not necessarily be any safer for him because he would be released to a home that does not follow the strict procedures laid out in the BOP's

modified operations plan." *Watson*, 2020 WL 7318269, at \*2; *see Feiling*, 453 F. Supp. 3d at 842

("[A]lthough Defendant argues that home confinement would allow him to better mitigate his

exposure to COVID-19, the same can be said of keeping Defendant in prison, where the BOP has

already taken steps to isolate prison facilities from internal and external sources of the

coronavirus.").

Because Defendant has established neither a particularized susceptibility to COVID-19 nor

a particularized risk of contracting COVID-19, he is not entitled to compassionate release under

§ 3582(c)(1)(A).

## II.    The Court Should Deny Defendant's Motion Because the Statutory Sentencing Factors Do Not Support Release.

Even if the Court were to determine that Defendant has demonstrated an extraordinary and

compelling reason for compassionate release, it should deny Defendant's motion because the

statutory sentencing factors weigh against release. *See, e.g.*, *High*, 997 F.3d at 187. Section

3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before

reducing a defendant's sentence. Those factors include "the nature and circumstances of the

underlying offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1),

and "the need for the sentence imposed" "to reflect the seriousness of the offense, [] promote

respect for the law, and [] provide just punishment for the offense," "to afford adequate deterrence

to criminal conduct," and "to protect the public from further crimes of the defendant," *id.*

§ 3553(a)(2). Courts should also consider "the kinds of sentences available," *id.* § 3553(a)(3), and

"the need to avoid unwarranted sentence disparities," *id.* § 3553(a)(6). Additionally, "the

Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated," by

itself, is "insufficient to warrant a sentence reduction." *Woolridge*, 2021 WL 415131, at \*3 (citing

U.S.S.G. § 1B1.13 n.3); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not

be considered an extraordinary and compelling reason" for a sentence reduction.). In this case, the relevant statutory sentencing factors do not support compassionate release.

The seriousness of Defendant's offense weighs heavily against release. Defendant engineered and implemented an extensive drug trafficking enterprise throughout the 1990s. For more than a decade, he engaged in routine violence, including murder, while distributing at least 1,850 kilograms of cocaine in multiple states, including hundreds of kilograms in and around this District. Courts in this District consistently have denied compassionate release based on the seriousness of a defendant's offense, including for offenses similar to (and less violent) than Defendant's. *See, e.g.*, *United States v. Reid*, No. 2:02-cr-172-7 (RBS), 2020 WL 7318266, at *3 (E.D. Va. Dec. 10, 2020) (finding that the statutory sentencing factors weighed against release where the defendant had "served as a 'manager' in a vast drug-trafficking conspiracy" and "continued his wrongful conduct even after his arrest by directing a co-conspirator to collect drug proceeds"); *Prater*, 2021 WL 54364, at *6 (finding that a defendant convicted of drug and firearm-related offenses had "proved his willingness to deal drugs on a large scale and to use violence in furtherance of that drug-dealing activity"); *Albury v. United States*, No. 2:19-cr-68, 2020 WL 6779643, at *5 (E.D. Va. Oct. 23, 2020) (finding that the statutory sentencing factors weighed against release where the defendant "was convicted of a large-scale drug trafficking crime that he conducted over the course of five years," "possessed firearms," and "often travelled interstate to purchase and sell drugs"); *United States v. Tomes*, 990 F.3d 500, 504 (6th Cir. 2021) (holding that the district court did not abuse its discretion in finding that a sentence reduction would not reflect the seriousness of the offense where the defendant "and his associates dealt in large quantities of various drugs" and the defendant "did so while armed, despite his status as a felon").

At sentencing, the Court imposed two concurrent sentences of life imprisonment. As a result, granting Defendant compassionate release would be inconsistent with the § 3553(a) factors because it would fail to promote respect for the law. *See, e.g.*, *High*, 997 F.3d at 189 (holding, where the guidelines range was 147 to 168 months and the district court imposed a sentence of 84 months, that it was "hardly surprising that the district court would conclude that the § 3553(a) factors . . . counseled against reducing [the defendant's] total term of imprisonment from 84 months to the approximately 27 months that [he] had at that point served"); *Bryant*, 2020 WL 7497805, at *6 (finding that compassionate release "would not promote respect for the law" where the defendant "already received a sentence below the recommended advisory guideline range, and ha[d] over one year remaining on that sentence").

Further, Defendant was convicted of offenses "involving firearms, which raises concerns about public safety should he be released." *Harris*, 2020 WL 7646633, at *5; *see also, e.g.*, *Lloyd*, 2020 WL 4501811, at *4 ("Defendant was also attributed with a firearm at sentencing, a fact that further underscore[d] the seriousness of his criminal conduct."); *United States v. Pilgrim*, No. 3:19cr50-01, 2021 WL 2003548, at *4 (E.D. Va. May 19, 2021) (finding, where the defendant's "convictions [were] for crimes of violence, involving the use of a firearm" and the defendant "was involved in more robberies than the two reported in the offenses of conviction," that "the protection of the public and the need to deter [the defendant] from further criminal conduct" weighed against a sentence reduction).

Courts in this District also have required defendants to bear the burden of proving that their release plan will not pose a danger to the public. *See, e.g.*, *United States v. Miller*, No. 3:16-cr-121 (MHL), 2020 WL 4547809, at *6 (E.D. Va. Aug. 6, 2020) (finding that the defendant had "not done enough to establish that he [would] not be a danger to society if released" based on his

"criminal history, BOP records, and seeming inability to follow court orders, combined with the fact that his proposed release plan [did] not include any plan for ensuring that he [would] follow such orders and rules if granted release"); *Beahm*, 2020 WL 4514590, at *3 ("As the party seeking relief and with no statutory guidance otherwise, Defendant bears the burden to prove that he is entitled to compassionate release.").

If released, Defendant says he would live in Panama, which is where he obtained the 1,850 kilograms of cocaine he trafficked to the United States. Focusing on his own needs, Defendant says he is "confident that [his] financial needs will be fully met" upon release. *See* Motion, ECF No. 101 at 9 (describing general experience as personal trainer and writer but providing no details about post-release pursuits). But Defendant's release plan provides no assurance of public safety. As such, Defendant has not met his burden to show that his release plan would adequately protect the public. *See, e.g.*, *Reid*, 2020 WL 7318266, at *3 (finding that the defendant "fail[ed] to establish [] how his release present[ed] a viable alternative sentence" where his plan would be to reside with his brother, who had been "arrested and incarcerated as a co-conspirator in the underlying offense conduct, and continued the drug-trafficking conspiracy" after the defendant's arrest); *Holloman v. United States*, No. 4:14-CR-68, 2020 WL 5913994, at *3 (E.D. Va. Oct. 6, 2020) (expressing concern that defendant's "release plan does not adequately protect the public" where his plan "would have him return to his parents' home—the same location in which the initial offense occurred"); *Coleman v. United States*, 465 F. Supp. 3d 543, 550 (E.D. Va. 2020) (determining that the defendant's "release plan [did] not adequately protect the public from the potential of a subsequent offense involving child pornography" because the defendant committed the underlying offense "while in the presence of family members, usually waiting until they went to sleep to view illicit images").

Further, Defendant has not proposed a viable plan for his continued supervision if released, as he would be living in Panama beyond the reach of the U.S. Probation Office. *See, e.g.*, *Turner v. United States*, No. 2:18-cr-128, 2020 WL 4370124, at *3 (E.D. Va. July 30, 2020) ("Under the circumstances, a generalized recitation of supervision conditions for sex offenders is no substitute for a release plan that proactively addresses the risk of a subsequent offense."); *Coleman*, 465 F. Supp. 3d at 550 (denying compassionate release where the court had no "confidence" that the defendant's "release plan [would be] conducive to appropriate conditions of supervision and would provide the community with adequate protection against the potential for a subsequent offense.").

Defendant asserts that compassionate release is appropriate based on evidence of his rehabilitation while in prison. Specifically, Defendant asserts that he "tutors other inmates and maintains clear conduct." Motion, ECF No. 101 at 7. But courts in this District repeatedly have held that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. *United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (quoting 28 U.S.C. § 994(t)); *see Woolridge*, 2021 WL 415131, at *3. Indeed, "rehabilitation is the *only* circumstance that Congress has singled out as *not* being 'extraordinary and compelling.'" *United States v. Logan*, No. 97-CR-99(3) (PJS/RLE), 2021 WL 1221481, at *7 (D. Minn. Apr. 1, 2021). This limitation makes sense because defendants are expected to conduct themselves appropriately and try to better themselves while incarcerated. *See, e.g.*, *Logan*, 2021 WL 1221481, at *8 ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary."); *United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("[G]ood behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and

17

compelling circumstances' that warrant a sentence reduction."); *see also* Order at 6, *United States v. Ahmad*, No. 1:11-cr-554-TSE, ECF No. 75 (E.D. Va. Apr. 8, 2021) (finding that the defendant's coursework did not support compassionate release, reasoning that "[i]t is not uncommon for a defendant to take educational classes to pass the time in prison"). Thus, although Defendant's steps toward self-improvement are commendable, these efforts are not so extraordinary as to support a sentence reduction. *See, e.g.*, *High*, 997 F.3d at 190 (concluding, where the defendant argued that he "had completed courses in Drug Education and Wellness at Risk and that he had not received any disciplinary infractions," that these factors were not "exceptional post-sentencing conduct" that would support a sentence reduction (internal quotation marks omitted)); *United States v. Wilson*, No. 20-6047, 2020 WL 8872371, at *2 (6th Cir. Dec. 30, 2020) (concluding that "rehabilitation alone does not provide a proper basis for relief, and the rehabilitation efforts documented by [the defendant] were not so out-of-the-ordinary as to render the district court's decision an abuse of discretion").

The cases cited by Defendant do not suggest otherwise. First, *United States v. Abed* is inapposite because it did not involve a motion for compassionate release. Rather, in *Abed*, the Court granted habeas relief because the defendant's sentences had been imposed under the Armed Career Criminal Act's residual clause, which the Supreme Court declared unconstitutionally vague in *Johnson v. United States*, 576 U.S. 591, 606 (2015). *See United States v. Abed*, No. 7:97-cr-24, ECF No. 751 (W.D. Va. Sept. 11, 2019). Defendant notes that the *Abed* defendants received lower sentences upon resentencing, Motion at 7, but this is unsurprising given that the defendants were resentenced *de novo* following a change in applicable law. Nevertheless, these defendants were not released; Abed was "resentenced to 360 months' imprisonment, which was an upward variance

from the recommended Sentencing Guidelines range of 188 to 235 months' imprisonment." *United States v. Abed*, 3 F.4th 104, 108 (4th Cir. 2021).

Defendant next cites *United States v. Jones*, No. l:96-cr-399, (D. Md.), which is also inapposite. There, the court reduced two defendants' sentences under Section 404 of the First Step Act, which allows courts to impose new sentences to correct disparities for crack cocaine offenses. In determining the extent of the sentencing reductions for the *Jones* defendants, the court highlighted that each "received a significantly longer sentence than most of [their] co-conspirators." *Jones*, No. l:96-cr-399, ECF No. 634 at 3 & ECF No. 635 at 3 (D. Md.). Although the court also noted that the defendants' post-conviction conduct was "excellent," the court explained that its motivation was to correct sentencing disparities—both for crack cocaine offenses and among co-conspirators.  ECF No. 634 at 3 & ECF No. 635 at 3. Here, Defendant has shown no such disparity, and no correction is needed.

Finally, Defendant cites *Brown v. United States*, 2020 WL 1248950 (D. Md. Mar. 16, 2020), another crack cocaine case where the court applied Section 404 of the First Step Act. In imposing a new sentence, the court found that it could not re-impose a life sentence because, due to a change in law, the statutory maximum was 40 years. *Id.* at *7. Noting that the defendant had "shown maturity since his sentencing," including by expressing remorse in a letter to the court, the court nevertheless imposed the maximum available penalty, concluding that "a total sentence of 40 years is sufficient but not greater than necessary to accomplish the objectives of sentencing." *Id.* at *10. Thus, Defendant is misguided in his suggestion that his good behavior in prison should override the sentencing court's rationale for imposing multiple life sentences.

Defendant's efforts at rehabilitation do not outweigh the seriousness of his crimes or the risks to the public and public interest that would be posed by Defendant's early release. *See, e.g.*,

*Pilgrim*, 2021 WL 2003548, at *4 (finding, where the defendant took "a number of educational and vocational courses and earned her GED," that her "commendable activity [did] not overcome" her "violent offense conduct or lessen in any way the need to deter her and to protect the public"); *Lloyd*, 2020 WL 4501811, at *4 n.7 ("While the Court commends Defendant for his documented efforts to work toward rehabilitation during his term of incarceration, his good behavior and pursuit of education in an institutional setting is insufficient to tip the scales in his favor based on the consideration of the record as a whole."); *Hill*, 2020 WL 6049912, at *5 ("While Hill's participation in an extensive number of educational and vocational programs [was] commendable," these measures did "not warrant his early release in light of the seriousness of his convictions and the time remaining on his sentence.").

Therefore, because the § 3553(a) factors counsel against relief, Defendant is not entitled to compassionate release.

### Conclusion

The Court should deny Defendant's Motion for Compassionate Release.

### Alternative Request for Extension
### to Obtain Documents and File Supplemental Response

As explained in Footnote 1, *supra*, Defendant's Motion refers to multiple exhibits supposedly containing a BOP petition and his medical records, but the United States has not received any such materials. To the extent these materials are available to the Court and the Court is considering granting compassionate release based on them, the United States would ask the Court to order that the materials be unsealed for the limited purpose of review by counsel of record and further order that the United States file a supplemental response within 30 days. However, for the reasons stated above, even assuming the truth of Defendant's assertions about his BOP petition and his medical history, the United States submits that Defendant has failed to establish an

extraordinary and compelling reason for compassionate release. Therefore, no extension should be necessary, and the Motion should be denied.

Respectfully submitted,

Jessica D. Aber
United States Attorney


_____/s/_____
R. Owen Dunn
Special Assistant United States Attorney
Kenneth R. Simon, Jr.
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3927
E-mail: ralf.dunn@usdoj.gov

**<u>Certificate of Service</u>**

I certify that on February 8, 2024, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record, and mailed a copy of the foregoing to the defendant at the following address:

Ernesto Francisco Cole, No. 44020-004
FCI Edgefield
P.O. Box 725
Edgefield, SC 29824

                        /s/
                        R. Owen Dunn
                        Special Assistant United States Attorney
                        United States Attorney's Office
                        2100 Jamieson Avenue
                        Alexandria, Virginia 22314
                        Tel: (703) 299-3927
                        E-mail: ralf.dunn@usdoj.gov